1
2
3
4
5
6

**FILED & ENTERED**

**JUN 13 2011**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| In re: | Case No. 2:11-bk-17831 TD |
|---|---|
| Gene Douglas Balas and | Chapter 13 |
| Carlos A. Morales, | MEMORANDUM OF DECISION |
| | Date:     June 13, 2011 |
| | Time:     2:00 p.m. |
| | Location: 255 E. Temple Street |
| Joint Debtors | Courtroom 1345 |
| | Los Angeles, CA  90012 |

## INTRODUCTION

This case is about equality, regardless of gender or sexual orientation, for two people who filed for protection under Title 11 of the United States Code (Bankruptcy Code).  Like many struggling families during these difficult economic times, Gene Balas and Carlos Morales (Debtors), filed a joint chapter 13 petition on February 24, 2011. Although the Debtors were legally married to each other in California on August 20,

2008,[1] and remain married today, the United States Trustee (sometimes referred to

simply as "trustee") moved to dismiss this case pursuant to Bankruptcy Code § 1307(c)

(Motion to Dismiss), asserting that the Debtors are ineligible to file a joint petition based

on Bankruptcy Code § 302(a) because the Debtors are two males.  The issue presented

to this court is whether the Debtors, who are legally married and were living in California

at the time of the filing of their joint petition, are eligible to file a "joint petition" as defined

by § 302(a).  As the Debtors state, "[T]he only issue in this Bankruptcy Case is whether

some legally married couples are entitled to fewer rights than other legally married

couples, based solely on a factor (the gender and/or sexual orientation of the parties in

the union) that finds no support in the Bankruptcy Code or Rules and should be a

constitutional irrelevancy."  Debtors' Opp. 5:24–28.  In this court's judgment, no legally

married couple should be entitled to fewer bankruptcy rights than any other legally

married couple.

## BACKGROUND

It is undisputed that the Debtors are a lawfully married California couple[2] who

were married at the time they filed their bankruptcy petition.  The Debtors have

undertaken a lifelong commitment to each other, and wish to have their marital

relationship accorded treatment in this court equal to the treatment of opposite-sex

---

[1] Motion, 3:17–18;  Marriage Certificate, Ex. 3 to the United States Trustee's Request for Judicial Notice.

[2] The court takes judicial notice that approximately 18,000 same-gender couples were legally wed in California prior to the November 2008 passage of California Proposition 8 and most of them may well remain validly married for all purposes under California law.  Thus, the Debtors would seem to be members of a significant segment of California citizens of the United States. *See Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 928 (N.D.Cal. 2010).

married couples.[3]  The Debtors came to this court seeking to restructure and repay their

debts under chapter 13 of the Bankruptcy Code following numerous episodes of illness,

hospitalization and extended periods of unemployment.  The Debtors filed their

bankruptcy petition jointly pursuant to § 302(a) which allows the filing of a joint petition

by any eligible individual "and such individual debtor's spouse."  It is undisputed that

each Debtor is an individual and is eligible to be a debtor in this court and to file a

voluntary petition for relief.

All trustee objections to confirmation were satisfied by the Debtors at the May 17

hearing on the Motion to Dismiss, and the Debtors' proposed plan of reorganization

currently is eligible for confirmation but for the pending Motion to Dismiss.

The House Bipartisan Legal Advisory Group, acting through the United States

Trustee, at the last minute orally requested a short continuance of the May 17 hearing in

order to determine whether to intervene in this case to address the issues.  Debtors

consented and the court granted the request; yet, there have been no further pleadings

and no challenge from the government to any issue raised by the Debtors.  The

government's non-response to the Debtors' challenges is noteworthy.

### JURISDICTION AND VENUE

The court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion to

Dismiss and objections to plan confirmation that were filed concurrently herein are core

matters under 28 U.S.C. §§ 157(b)(2)(A) & (L) that the court may hear and determine

pursuant to 28 U.S.C. § 157(b)(1).

---

[3] *See* declarations of Balas and Morales, Debtors' Opp. 36-51.

1

## DISCUSSION

2      The United States Trustee brought this Motion to Dismiss pursuant to § 1307(c)

3  as the Bankruptcy Code basis for dismissal.  Section 1307(c) provides, in relevant part:

4       . . . on request of a party in interest or the United States trustee and
5       after notice and a hearing, the court may convert a case under this
        chapter to a case under chapter 7 of this title, or may dismiss a
6       case under this chapter, whichever is in the best interests of
        creditors and the estate, *for cause*, including –
7            (1)    unreasonable delay by the debtor that is prejudicial to
8                   creditors;
             (2)    nonpayment of any fees and charges required under
9                   chapter 123 of title 28;
             (3)    failure to file a plan timely under section 1321 of this title;
10           (4)    failure to commence making timely payments under
11                  section 1326 of this title;
             (5)    denial of confirmation of a plan under section 1325 of
12                  this title and denial of a request made for additional
                   time for filing another plan or a modification of a plan;
13           (6)    material default by the debtor with respect to a term of
14                  a confirmed plan;
             (7)    revocation of the order of confirmation under section
15                  1330 of this title; and denial of confirmation of a
                   modified plan under section 1329 of this title;
16           (8)    termination of a confirmed plan by reason of the
17                  occurrence of a condition specified in the plan other
                   than completion of payments under the plan;
18           (9)    only on request of the United States trustee, failure of
19                  the debtor to file, within fifteen days, or such
                   additional time as the court may allow, after the filing
20                  of the petition commencing such case, the information
                   required by paragraph (1) of section 521;
21          (10)    only on request of the United States trustee, failure to
22                  timely file the information required by paragraph (2) of
                   section 521; or
23          (11)    failure of the debtor to pay any domestic support
                   obligation that first becomes payable after the date of
24                  the filing of the petition.
25  11 U.S.C. § 1307(c) (emphasis added).

26      The Motion to Dismiss is not based on any of the eleven causes for dismissal

27  listed in § 1307(c).  Instead, the "cause" asserted by the United States Trustee is that

28

the joint petition was filed by two men.  Although § 302(a) explicitly allows any qualified

individual and such individual's spouse to file a joint petition, the federal Defense of

Marriage Act, Pub. L. No. 104–199, 110 Stat. 2419 (Sept. 21, 1996) *codified in pertinent

part* at 1 U.S.C. § 7 (herein referred to as "DOMA"), defines the term "spouse" for the

purpose of applying federal law, as "a person of the opposite sex who is a husband or a

wife."  1 U.S.C. § 7.   DOMA elaborates:

> In determining the meaning of any Act of Congress, or of any ruling,
> regulation, or interpretation of the various administrative bureaus
> and agencies of the United States, the word "marriage" means only
> a legal union between one man and one woman as husband and
> wife, and the word "spouse" refers only to a person of the opposite
> sex who is a husband or a wife.

*Id.*

The United States Trustee cites two cases to support his position that this case

should be dismissed "for cause" under § 1307(c).  The first is *In re Jephunneh

Lawrence & Assoc. Chartered*, 63 B.R. 318, 321 (Bankr. D.C. 1986), where the court

determined that a joint petition was improperly filed by a corporation and its sole

shareholder.  The second is *In re Malone*, 50 B.R. 2, 3 (Bankr. E.D. Mich. 1985), where

the court held that two debtors who cohabitated but had never been legally married

were not entitled to file a joint petition.  The decisions are neither binding on this court

nor pertinent to the Debtors in this case who are two people legally married to each

other.  The United States Trustee provides no relevant bankruptcy case law that is

controlling on this court or that supports the trustee's position.  Instead, it is clear that

the Motion to Dismiss simply asks for this case to be dismissed for cause under §

1307(c) based on DOMA unless the Debtors consent to "voluntarily sever their joint

petition by a date certain."  Motion to Dismiss 4:17–18.

A decision announced in *In re Somers*, No. 10–38296, 2011 WL 1709839, at *5 (Bankr. S.D.N.Y. May 4, 2011), on the other hand, determined that there was insufficient cause to dismiss the Debtors' joint chapter 7 bankruptcy case under the "only for cause" provision of § 707(a) based on DOMA.[4]  The same result was reached in *In re Ziviello-Howell*, Ch. 7 Case No. 11-22706, *Civil Minutes*, Docket No. 44 (Bankr. E.D. Cal. May 31, 2011) (McManus, J.) (attached to Debtors' Reply as Tab G) (denying a motion to dismiss a joint chapter 7 case filed by two women married to each other because the court in exercise of its discretion determined from the record in the case that there was no "cause" for dismissal under § 707(a)).  Similarly here, cause does not exist under § 1307(c).  No creditor has sought dismissal.  The trustee has cited no failure by the Debtors in performing their obligations under § 1307(c).  The trustee seeks dismissal solely because the Debtors are a same-sex married couple, in violation of DOMA's definition of "spouse" as the statute applies to Bankruptcy Code § 302(a).

The Debtors have asserted that the equal protection component of the Fifth Amendment "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920) ("all persons similarly circumstanced shall be treated alike."))  Debtors' Opp. 6:1-5.

Debtors assert:

As a lawfully wedded couple, the Debtors are constitutionally indistinguishable from opposite-gender married couples who enjoy the rights and responsibilities attendant to joint bankruptcy petitions.  DOMA's irrational insistence to the contrary "is not within our constitutional tradition," as it violates "the principles that government and each of its parts remain open on impartial terms to

---

[4] *Somers* is now on appeal.

all who seek its assistance." *Romer v. Evans*, 517 U.S. 620, 633
(1996).  DOMA, as the U.S. Trustee seeks to apply it in this
Bankruptcy Case, is inconsistent with the Constitution's guarantee
of equal treatment.  The Motion to Dismiss should be denied and
the Confirmation Objection should be overruled.

Debtors' Opp. 6:5-12.

In response, the court must begin its consideration of the issues with the
presumption that a duly enacted act of Congress is constitutional.  The Debtors' burden
in challenging DOMA's constitutionality is a heavy one, as is the burden on this court in
considering the Debtors' position.

The court must consider Debtors' challenge to DOMA in the context of the
straightforward facts of this case and by analyzing the claims made by the Debtors.  In
that regard, the court finds particularly helpful the thoughtful words of Justice Jackson,
concurring in a unanimous decision upholding a municipal ordinance on due process
grounds in *Railway Exp. Agency v. New York,* 336 U.S. 106, 112–13 (1949), where he
elucidated his view of the distinction between the function of due process versus the
function of equal protection under constitutional analysis:

> The burden should rest heavily upon one who would persuade us
> to use the due process clause to strike down a substantive law or
> ordinance. . . . Invalidation of a statute or an ordinance on due
> process grounds leaves ungoverned and ungovernable conduct
> which many people find objectionable.
>
> Invocation of the equal protection clause, on the other hand, does
> not disable any governmental body from dealing with the subject at
> hand.  It merely means that prohibition or regulation must have a
> broader impact.  I regard it as a salutary doctrine that cities, states
> and the Federal Government must exercise their powers so as not
> to discriminate between their inhabitants except upon some
> reasonable differentiation fairly related to the object of regulation.
> This equality is not merely abstract justice.  The framers of the
> Constitution knew, and we should not forget today, that there is no
> more effective practical guaranty against arbitrary and

unreasonable government than to require that the principles of law
which officials would impose upon a minority must be imposed
generally.  Conversely, nothing opens the door to arbitrary action
so effectively as to allow those officials to pick and choose only a
few to whom they will apply legislation and thus to escape the
political retribution that might be visited upon them if larger numbers
were affected.  Courts can take no better measure to assure that
laws will be just than to require that law be equal in operation.

*Railway Exp. Agency*, 336 U.S. 106 at 112–13.

From the standpoint of this court, the foregoing principles require careful judicial

scrutiny not only of the Debtors' claim of right to file their joint bankruptcy petition but

also of DOMA as applied to these Debtors who are seeking bankruptcy relief on an

equal basis with other married debtors filing jointly under § 302(a).  The court has

carefully scrutinized the Motion to Dismiss and Debtors' Opposition.  The court's

examination and conclusions follow.

**Sexual orientation.**  With respect to the question of discrimination on the basis

of sexual orientation, Debtors have stated that the issue is: "whether under the

constitution legally married couples who are heterosexual may be granted more rights

than legally married couples who are gay."  Debtors' Opp. 14:11–12.  Debtors believe

they should not be singled out for differential treatment by DOMA; rather, that "[b]eing

similarly circumstanced, they are entitled to be treated alike."  Debtors' Opp. 14:15

(internal quotation marks omitted).

Debtors offer strong authority for their position that the Fifth Amendment, like the

Fourteenth, "includes an equal protection component" and that the Fifth Amendment in

this respect "mirrors the Fourteenth Amendment."  Debtors' Opp. 14: 2–16 & n. 8 (citing

extensive case law).  Debtors cite Justice O'Connor's concurring opinion in *Lawrence v.*

*Texas*, 539 U.S. 558, 583 (2003), noting that "While it is true that the law applies only to

conduct, the conduct targeted by [the statute at issue] is conduct that is closely

correlated with being homosexual.  Under such circumstances, [the] law is targeted at

more than conduct.  It is instead directed toward gay persons as a class."  Again, in

2010, the Supreme Court rejected the claim that discrimination against gay and lesbian

individuals is no more than discrimination on the basis of "conduct" when it said, "Our

decisions have declined to distinguish between status and conduct in this context."

*Christian Legal Soc'y v. Martinez*, 130 S.Ct. 2971, 2990 (2010).

    **Heightened scrutiny**.  The Debtors urge that heightened scrutiny of

classifications based on sexual orientation is warranted and should be applied in this

case, citing a letter from United States Attorney General Eric H. Holder, Jr., to Speaker

of the House of Representatives John Boehner, dated February 23, 2011 (the Holder

Letter), attached to Debtors' Opposition as Tab A.  The Holder Letter concludes, in part:

> After careful consideration, including a review of my
> recommendation, the President has concluded that given a number
> of factors, including a documented history of discrimination,
> classifications based on sexual orientation should be subject to a
> heightened standard of scrutiny.  The President has also concluded
> that Section 3 of DOMA, as applied to legally married same-sex
> couples, fails to meet that standard and is therefore
> unconstitutional.

Holder Letter at 5.  In determining the appropriate level of scrutiny, the Holder Letter

cites and discusses four factors that should be considered:

> (1) whether the group in question has suffered a history of
> discrimination; (2) whether individuals exhibit obvious, immutable,
> or distinguishing characteristics that define them as a discrete
> group; (3) whether the group is a minority or is politically powerless;
> and (4) whether the characteristics distinguishing the group have
> little relation to legitimate policy objectives or to an individual's
> ability to perform or contribute to society.

Holder Letter at 2 (internal quotation marks omitted) (citing *Bowen v. Gilliard*, 483 U.S. 587, 602–03 (1987) and *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441–42 (1985)).

The court incorporates here a portion of the Debtors' Opposition, page 22, line 7, through page 24, line 17, mostly verbatim but paraphrased in places, as follows:

The Holder Letter demonstrates that DOMA cannot withstand heightened scrutiny. "Under heightened scrutiny, 'a tenable justification must describe actual state purposes, not rationalizations for actions in fact differently grounded.'" Holder Letter at 4 (quoting *United States v. Virginia*, 518 U.S. 515, 535–36 (1996)). "In other words, under heightened scrutiny, the United States cannot defend [DOMA] by advancing hypothetical rationales, independent of the legislative record;" rather, the government is limited to "invoking Congress' actual justification for the law." Holder Letter at 4. The Holder Letter states that those actual justifications are indefensible. *Id.* at 4–5 & n.7. The legislative record underlying DOMA is filled with "precisely the kind of stereotype-based thinking and animus the Equal Protection Clause is designed to guard against." *Id.* at 4 (citing *City of Cleburne,* 473 U.S. at 448 (1985) (finding that "mere negative attitudes, or fear" are not permissible bases for discriminatory treatment); *Romer v. Evans*, 517 U.S. 620, 635 (1996) (rejecting the rationale that a statute was supported by "the liberties of landlords or employers who have personal or religious objections to homosexuality"); *Palmore v. Sidotti*, 466 U.S. 429, 433 (1984) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.")); *Dragovich v. U.S.*, No. 10–01564, 2011 WL 175502, at *12 (N.D. Cal. Jan. 18,

2011) ("The animus toward, and moral rejection of, homosexuality and same-sex

relationships are apparent in the Congressional record.")[5]

In addition to a close examination of the actual motivations and justifications for

DOMA (rather than merely imagining hypothetical rationales), heightened scrutiny is

distinct from rational basis review insofar as the "analysis is as-applied rather than

facial." *Witt v. Dep't of Air Force*, 527 F.3d 806, 819 (9th Cir. 2008). Thus, when the

Ninth Circuit in *Witt* applied heightened scrutiny to the "Don't Ask, Don't Tell" law that

discriminated against gay and lesbian members of the armed services, the court

refused the government's invitation to limit its inquiry to whether the military's policy

"has some hypothetical, post-hoc rationalization in general," such as "unit cohesion" or

"troop morale." *Id.* Instead, the Ninth Circuit's heightened scrutiny review required the

government to demonstrate that "a justification exists for the application of the policy *as

applied to Major Witt.*" *Id.* (emphasis added). *See In re Golinski I,* 587 F.3d 901, 904

(9th Cir. 2009) (describing the holding in *Witt* as requiring the military's policy "to survive

heightened scrutiny as applied to each service member discharged"). The case was

remanded to the district court for trial on whether application of "Don't Ask, Don't Tell"

"specifically to Major Witt significantly furthers the government's interest and whether

---

[5] The supposed governmental interest offered in support of DOMA fails even the lowest
standard of constitutional scrutiny (rational basis), and thus necessarily could not meet a
heightened standard. *See In re Levenson I*, 560 F.3d 1145, 1149–51 (9th Cir. 2009); *In re
Levenson II*, 587 F.3d 925, 931-33 (9th Cir. 2009); *Dragovich v. U.S.*, No. 10–01564, 2011 WL
175502, at *13, *14 (N.D. Cal. Jan. 18, 2011); *Gill v. Office of Pers. Mgmt.*, 699 F. Supp. 2d 374,
387 (D. Mass. 2010).

less intrusive means would achieve substantially the government's interest."  *Witt*, 527

F.3d at 821.[6]

As in *Witt*, heightened scrutiny should be the standard in this case; the requisite

analysis should be "as-applied rather than facial."  *See id.* at 819.  Thus, the question

the court must focus on is whether dismissing the Debtors' bankruptcy case pursuant to

DOMA "advances an important governmental interest."  *See id.* at 821.

Following the direction of the Ninth Circuit in *Witt*, the court here discerns no

valid, defensible governmental interest advanced by dismissing the Debtors' bankruptcy

case or requiring, as the Motion to Dismiss suggests, that the Debtors consent [under

the duress of DOMA] to "voluntarily sever their joint petition by a date certain."  *See*

Motion to Dismiss 4:17–18.  The Debtors are lawfully married and are otherwise fully

qualified to be joint debtors pursuant to § 302(a) of the Bankruptcy Code.  The court

concludes that dismissal of the bankruptcy case will not advance any of the following

governmental interests:

- Encouraging responsible procreating and child-bearing (the Debtors have

   no children, and even if they did, there is no basis in the evidence or

   authorities to conclude that Debtors' joint bankruptcy filing would affect

   Debtors' children (if any, later) differently from children in other "traditional"

   joint bankruptcy cases);

---

[6] On remand, and after a full trial on the merits, the district court held that "the suspension and discharge of Margaret Witt did not significantly further the important government interest in advancing unit morale and cohesion," and ordered Major Witt reinstated.  *Witt v. Dep't of Air Force*, 739 F. Supp. 2d 1308, 1315–17 (W.D. Wash. 2010) ("The evidence before the Court is that Major Margaret Witt was an exemplary officer.  She was an effective leader, a caring mentor, a skilled clinician, and an integral member of an effective team.  Her loss within the squadron resulted in a diminution of the unit's ability to carry out its mission.  Good flight nurses are hard to find.").

- Defending or nurturing the institution of traditional heterosexual marriage (the Debtors are already married to each other, and allowing them to proceed jointly in this bankruptcy case cannot have the slightest cognizable effect on anyone else's marriage);

- Defending traditional notions of morality (the Debtors' joint bankruptcy filing is in no sense discernible to the court to be a validly challengeable affront to morality, traditional or otherwise, under the Fifth Amendment); or

- Preserving scarce resources (no governmental resources are implicated by the Debtors' bankruptcy case different from the resources brought to bear routinely in thousands upon thousands of joint bankruptcy cases filed over the years).

*See Gill v. Office of Pers. Mgmt.*, 699 F. Supp. 2d 374, 388 (D. Mass. 2010) (discussing the reasons Congress offered for passing DOMA but noting that those reasons were disavowed by the government "[f]or purposes of [the Gill] litigation").

The court hereby adopts the Holder Letter and the Debtors' Opposition (as discussed above). Both succinctly and cogently analyze the issues on this Motion to Dismiss. The court concludes that the Attorney General's and Debtors' analyses are sound and consistent with the legislative history of DOMA and present a sensible view of the standards that this court should apply to its constitutional analysis.

**Discrimination against lesbians and gay men.** The Debtors have demonstrated through additional authoritative case law that lesbians and gay men have experienced a history of discrimination. *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 573 (9th Cir. 1990) (acknowledging that "homosexuals

have suffered a history of discrimination"); *Witt*, 527 F.3d at 824–25 (noting that

homosexuals have "experienced a history of purposeful unequal treatment"); *Perry v.*

*Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009) (pointing out the

difficulty in denying that gays and lesbians have experienced discrimination in the past

in light of the Ninth Circuit's ruling in *High Tech Gays*); *Perry v. Schwarzenegger*, 704 F.

Supp. 2d 921, 981–82 (N.D. Cal. 2010) (acknowledging extensive evidence of public

and private discrimination against gays and lesbians in California and throughout the

United States).  *See*, *Perry,* 704 F. Supp. 2d at 991–1003, (illustrating the extent and

depth of the trial evidence considered and discussed by the district court in that court's

conclusions of law).[7]

      **Sexual orientation is a "defining and immutable characteristic."**  Debtors

cite important precedent determining that sexual orientation is recognized as a defining

and immutable characteristic.  *Hernandez-Montiel v. Immigration and Naturalization*

*Serv.*, 225 F.3d 1084, 1093 (9th Cir. 2000) (finding that "Sexual orientation and sexual

identity are immutable; they are so fundamental to one's identity that a person should

not be required to abandon them."), overruled in part on other grounds by *Thomas v.*

*Gonzales*, 409 F.3d 1177 (9th Cir. 2005); *Karouni v. Gonzales*, 399 F.3d 1163, 1173

(9th Cir. 2005) (agreeing with *Hernandez-Montiel* and acknowledging that

homosexuality is "a fundamental aspect of . . . human identity. . . ."); *Perry*, 704 F. Supp.

2d at 966 ("No credible evidence supports a finding that an individual may, through

conscious decision, therapeutic intervention or any other method, change his or her

sexual orientation.").

---

[7] The district court's decision is now on appeal to the United States Court of Appeals for the
Ninth Circuit.

**Lesbians and gay men face significant political obstacles.**  Debtors'

evidence and the authorities cited establish conclusively that lesbians and gay men face

significant political obstacles.  *Romer*, 517 U.S. 620 (1996) (overturning a Colorado

state constitutional amendment that prohibited all legislative, executive, or judicial action

designed to protect homosexual persons from discrimination); *Lawrence*, 539 U.S. 558

(overturning a Texas statute making it a crime for two persons of the same sex to

engage in certain intimate sexual conduct); *Strauss v. Horton*, 46 Cal.4th 364 (2009)

(upholding California's Proposition 8 prohibiting same-sex marriage against a state

constitutional challenge); *Lofton v. Sec'y of Dep't of Children & Family Servs*, 358 F.3d

804 (11th Cir. 2004) (upholding Florida statute barring same-sex couples from

adopting); *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006)

(upholding Nebraska state constitutional amendment establishing that two persons of

the same sex could not unite in a "civil union, domestic partnership, or other similar

same-sex relationship"); *Perry*, 704 F. Supp. 2d at 943 (crediting expert testimony that

"gays and lesbians possess less power than groups [traditionally] granted judicial

protection").

**Sexual orientation is irrelevant to an individual's ability to contribute to**

**society.**  The Debtors demonstrate persuasively through significant case law the

important contributions that gays and lesbians have made to our society.  *Watkins v.*

*U.S. Army*, 875 F.2d 699, 725 (9th Cir. 1989) (*en banc*) (Norris, J., concurring) ("Sexual

orientation plainly has no relevance to a person's ability to perform or contribute to

society.") (internal quotation marks omitted); *Perry,* 704 F. Supp. 2d at 1002 (concluding

that "by every available metric, opposite-sex couples are not better than their same-sex

1    counterparts; instead, as partners, parents and citizens, opposite-sex couples and

2    same-sex couples are equal").

3        **Gender discrimination.**  The Debtors in their Opposition have presented to the

4    court persuasive decisional authority supporting the proposition that DOMA violates

5    standards of due process and equal protection as established under the Fifth

6    Amendment.

7

8        In *Reed v. Reed*, 404 U.S. 71, 74 (1971), the Supreme Court unanimously struck

9    down an Idaho statute as a violation of the equal protection clause of the Fourteenth

10   Amendment, concluding that an "arbitrary preference established in favor of males by . .

11   . the Idaho Code cannot stand in the face of the Fourteenth Amendment's command

12   that no State deny the equal protection of the laws to any person within its jurisdiction."

13

14       In *Orr v. Orr*, 440 U.S. 268, 278–79 (1979), the Supreme Court struck down an

15   Alabama statute authorizing the imposition of alimony obligations on husbands but not

16   on wives, thereby disallowing differential treatment on the basis of sex, under the equal

17   protection clause of the Fourteenth Amendment.  The Debtors' argument is persuasive

18   that DOMA's discrimination here against a same-sex married couple warrants the same

19   scrutiny and result.

20

21       In *Califano v. Westcott*, 443 U.S. 76, 83–84 (1979), where a federal program

22   provided unemployment benefits to men but not women, the Supreme Court found the

23   law to be gender-biased where it denied benefits on the basis of the gender of a

24   qualifying parent, a wage earner who happened to be a woman and not a man.

25   Similarly here, this court concludes that DOMA is gender-biased because it is explicitly

26   designed to deprive the Debtors of the benefits of other important federal law solely on

27

28

the basis that these debtors are two people married to each other who happen to be men.  Further, *nothing* about the Debtors' gender affects their fitness for bankruptcy protection available to opposite-sex marital partners.  Spouses should be treated equally, whether of the opposite-sex variety or the same-sex variety, under heightened scrutiny and the principles announced by the Supreme Court and other lower court rulings discussed above.

These views have found significant recent added support in the Ninth Circuit on issues specifically affecting the Debtors in this case.  For example, in *Perry,* 704 F. Supp. 2d at 996, the district court recognized that "[s]exual orientation discrimination can take the form of [prohibited] sex discrimination."  Findings of prohibited sex discrimination were made in *In re Levenson I*, 560 F.3d 1145, 1147 (9th Cir. 2009); *Perry*, 704 F. Supp. 2d at 921; *see also In re Golinski*, 587 F.3d 956, 957 (9th Cir. 2009) (*Golinski II*).

**Rational basis review**.  The goals of DOMA, according to its congressional proponents, include "encouraging responsible procreation and child-bearing," "defending and nurturing traditional heterosexual marriage," "defending traditional notions of morality," and "preserving scarce resources."  Debtors' Opp. 27:20–23; *see* Debtors' Opp. 24:18–32:10.  Debtors cite prior judicial determinations that DOMA does not withstand even a rational basis review with respect to these governmental interests. *In re Levenson I*, 560 F.3d at 1149–51; *In re Levenson II*, 587 F.3d 925, 931–33 (9th Cir. 2009); *Dragovich* No. 10–01564, 2011 WL 175502, at *13, *14; *Gill*, 699 F. Supp. 2d at 397.  *See* Debtors' Opp. 21:18–24:17.  The Debtors assert that as to each of these issues no judicial determination has fallen on the side of upholding the

constitutionality of DOMA.  Debtors' Opp. 1:24–2:1–13.  The United States Trustee has

not cited any authoritative or persuasive decisional authority supporting the

constitutional validity of DOMA as applied to the Debtors.

**The interests asserted by Congress do not support DOMA's validity.**  "The

House report on DOMA identified three interests advanced by the statute:  the

government's interest in defending and nurturing the institution of traditional

heterosexual marriage; the government's interest in defending traditional notions of

morality; and the government's interest in preserving scarce government resources."

*See Levenson II*, 587 F.3d at 932 (citing H.R. Rep. No. 104–664, at *12–*18) (internal

quotation marks omitted).  For the reasons stated above, none of these interests stands

up to any level of scrutiny.

For example, the joint petition of the Debtors will have no effect on procreation or

child-bearing.  It would not appear to be fair or rational for the court to conclude that

allowing the Debtors to file a joint bankruptcy petition will in any way harm any marriage

of heterosexual persons.  Creditors in Debtors' bankruptcy case have not filed any

support for the Motion to Dismiss this case; creditors in this case, as in other cases,

simply hope to be paid what they are owed.  Beyond that, no creditor's notion of

morality concerning a same-sex marriage or what any such creditor may think about

homosexuality or the question of human sexual orientation has any valid bearing on the

creditor's rights in this case.

This court can conceive of no fair, just and rational basis to conclude that DOMA

will contribute to the achievement of the goal of preserving scarce government

resources and finds no basis in the evidence or record in this case to credit such a proposition.

Although individual members of Congress have every right to express their views and the views of their constituents with respect to their religious beliefs and principles and their personal standards of who may marry whom, this court cannot conclude that Congress is entitled to solemnize such views in the laws of this nation in disregard of the views, legal status and living arrangements of a significant segment of our citizenry that includes the Debtors in this case.  To do so violates the Debtors' right to equal protection of those laws embodied in the due process clause of the Fifth Amendment.

This court cannot conclude from the evidence or the record in this case that any valid governmental interest is advanced by DOMA as applied to the Debtors.  Debtors have urged that recent governmental defenses of the statute assert that DOMA also serves such interests as "preserving the status quo," "eliminating inconsistencies and easing administrative burdens" of the government.  None of these *post hoc* defenses of DOMA withstands heightened scrutiny.  *See* Debtors' Opp. 32:11–34:15.  In the court's final analysis, the government's only basis for supporting DOMA comes down to an apparent belief that the moral views of the majority may properly be enacted as the law of the land in regard to state-sanctioned same-sex marriage in disregard of the personal status and living conditions of a significant segment of our pluralistic society.  Such a view is not consistent with the evidence or the law as embodied in the Fifth Amendment with respect to the thoughts expressed in this decision.  The court has no doubt about its conclusion: the Debtors have made their case persuasively that DOMA deprives them of the equal protection of the law to which they are entitled.  The court is of the

1    opinion that the Debtors have met their high burden of overcoming the presumption of

2    the constitutionality of DOMA.

3                                          **CONCLUSION**

4            The Debtors have demonstrated that DOMA violates their equal protection rights

5    afforded under the Fifth Amendment of the United States Constitution, either under

6    heightened scrutiny or under rational basis review.  Debtors also have demonstrated

7    that there is no valid governmental basis for DOMA.  In the end, the court finds that

8    DOMA violates the equal protection rights of the Debtors as recognized under the due

9    process clause of the Fifth Amendment.

10            No one expressed the Debtors' view as pertinent to this simple bankruptcy case

11    more eloquently and profoundly than Justice William O. Douglas in the concluding

12    paragraph of his opinion for the majority in *Griswold v. Connecticut*, 381 U.S. 479, 486

13    (1965):

14
15                We deal with a right of privacy older than the Bill of Rights—older
                than our political parties, older than our school system.  Marriage is
16                a coming together for better or for worse, hopefully enduring, and
                intimate to the degree of being sacred.  It is an association that
17                promotes a way of life, not causes; a harmony in living, not in
                political faiths; a bilateral loyalty, not commercial or social projects.
18                Yet it is an association for as noble a purpose as any involved in
                our prior decisions.

19
20    *Id.*

21            Upon consideration of the pleadings and all other materials filed in this case, and

22    for good cause shown, the court finds that the Debtors satisfy every legal requirement to

23    pursue their joint petition as filed pursuant to § 302(a).  For the reasons stated herein

24    and in the Debtors' Opposition to the Motion and Debtors' supporting authorities, the

25    Motion to Dismiss Debtors' chapter 13 case based on § 1307(c) is denied.

IT IS SO ORDERED.

June 13, 2011



_____
United States Bankruptcy Judge




_____
Chief Judge, United States Bankruptcy Court




_____
United States Bankruptcy Judge




_____
United States Bankruptcy Judge




_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

**NOTICE OF ENTERED ORDER AND SERVICE LIST**

Notice is given by the court that a judgment or order entitled (*specify*)  **_MEMORANDUM OF DECISION_** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **_6/13/11_**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Kathy A Dockery (TR)
efiling@CH13LA.com

Peter M Lively on behalf of Debtor Gene Balas
PeterMLively2000@yahoo.com, PeterMLively2000@yahoo.com

Robert J Pfister on behalf of Debtor Gene Balas
rpfister@ktbslaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)
hatty.yip@usdoj.gov

M Jonathan Hayes on behalf of Interested Party Courtesy NEF
jhayes@polarisnet.net

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Joint Debtors
Gene Douglas Balas
Carlos A. Morales
5702 Lindenhurst Ave.
Los Angeles, CA 90036

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                    **F 9021-1.1.NOTICE.ENTERED.ORDER**

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                    **F 9021-1.1.NOTICE.ENTERED.ORDER**